595 P.2d 990

**STATE of Arizona, Appellee,**

v.

**Robert Dale GRAY, Appellant.**

No. 4534.

Supreme Court of Arizona,
En Banc.

May 1, 1979.

Rehearing Denied June 5, 1979.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer III and Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

This is an appeal by Robert Dale Gray from his convictions of second degree rape and of lewd and lascivious acts, and from his concurrent sentences of fifty to sixty years in prison for the rape and four and one-half to five years for the lewd and lascivious acts. We have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5). We must address six issues:

1. Whether A.R.S. § 13–611(B) denies Gray equal protection of the law;

2. Whether the court erred by instructing the jury and submitting a form of verdict on second degree rape;

3. Whether the court erred by giving an instruction on flight;

4. Whether Gray's sentence for second degree rape is excessive;

5. Whether the court erred by failing to credit Gray's sentence with time spent in presentence incarceration; and

6. Whether the record accurately reports Gray's sentence for lewd and lascivious acts.

Gray claims that his conviction of second degree rape under A.R.S. § 13–611(B) violated his constitutional right to equal protection of the laws, since the statute prohibits consensual intercourse by an adult male with a minor female but not by an adult female with a minor male.

In sustaining legislatively created classifications, the reviewing court must find that they are not patently arbitrary and that they bear at least a rational relationship to a legitimate governmental interest. *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973). There are, however, some classifica-

tions described as inherently suspect that require more than a rational basis. Classifications based on race, alienage and national origin are subject to close scrutiny requiring a compelling state interest in their formulation to be constitutionally permissible. *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

Although a plurality in *Frontiero v. Richardson, supra*, would have also required a compelling state interest when a classification is based on gender, that position was apparently abandoned in *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). There the Court applied a middle-tier approach holding that any distinction in treatment based on gender must be substantially related to the achievement of an important governmental objective. *Id.* U.S. at 197, 97 S.Ct. at 457, 50 L.Ed.2d at 407. We therefore must determine whether our second degree rape statute serves an important governmental purpose and whether its limitation of protection to minor females is substantially related to that purpose.*

■ Our statute, A.R.S. § 13–611, was adopted from a California statute, Cal.Pen. Code § 261 (West). The California Legislature enacted that statute primarily to prevent unwanted pregnancies in females under the statutory age, along with all the attendant psychological, medical, sociological, and moral problems including, more recently, questions of whether to have an abortion. *People v. McKellar,* 81 Cal. App.3d 367, 146 Cal.Rptr. 327 (1978). We think that the same objective must have been at least one of the reasons for the adoption of the statute by our legislature, and we think such an objective cannot be characterized as anything but important.

Next, we must determine whether providing protection only to females is substantially related to that governmental objec-

tive. Although young persons of either sex may experience psychological injury from sexual intercourse with an adult, only the young female is likely to suffer physical injury, and certainly only she may become pregnant. The young male simply is not as likely to be injured nor can he be injured to the same extent as a young female. Limiting protection to young females is therefore substantially related to the purpose of the statute. The statute is constitutional. The weight of authority clearly supports our reasoning and holding. *E. g., People v. McKellar, supra; State v. Brothers,* 384 A.2d 402 (Del.Super.1978); *State v. Rundlett,* 391 A.2d 815 (Me.1978); *State v. Thompson,* 162 N.J.Super. 302, 392 A.2d 678 (1978).

## SECOND DEGREE RAPE INSTRUCTION

Gray was charged with violating A.R.S. § 13–611(A), first degree rape. Following the presentation of evidence, the court instructed the jury and gave it a form of verdict on second degree rape, pursuant to A.R.S. § 13–611(B). Gray alleges error.

■ We recognize that procedural due process requires notice of the charge and an opportunity to be heard in defense thereof. *State v. Klem,* 108 Ariz. 349, 350, 498 P.2d 216, 217 (1972). We also acknowledge that an accused charged under A.R.S. § 13–611(A) may be taken by surprise if the proof offered brings him within A.R.S. § 13–611(B) and a form of verdict is submitted thereon, even though both sections are merely different circumstances in which the crime of rape may be committed. *State v. Klem, supra.* However, if the accused has received notice of such a possibility in time to defend, he is not prejudiced by its occurrence. *State v. Carrico,* 116 Ariz. 547, 570 P.2d 489 (1977); *State v. Klem, supra.*

■ The victim testified at the preliminary hearing that she was seventeen years

---

* Although we have previously upheld the forcible rape statute against an equal protection attack in *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974), *cert. denied,* 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975), that case was decided using the rational basis test which *Craig v. Boren, supra,* makes inappropriate. Therefore, we do not rely on *Kelly* in deciding this case.

old. Gray was therefore on notice at that time that another part of the rape statute was applicable. He was not denied due process.

## FLIGHT INSTRUCTION

The court instructed the jury on the implications permissible from evidence of flight by the defendant. Gray claims this was error since a flight instruction was unsupported by any evidence before the jury. We disagree.

■ In Arizona, a flight instruction is proper if the evidence supports a reasonable inference that there was flight upon immediate pursuit or if the evidence supports the inference that the defendant concealed or attempted to conceal himself. *State v. Garcia*, 102 Ariz. 468, 433 P.2d 18 (1967); *State v. Shields*, 26 Ariz.App. 121, 546 P.2d 846 (1976).

■ The trial transcript shows that after Gray had intercourse with the victim, he left the apartment through a kitchen window. He was seen leaving and was pursued by a neighbor. He got away by speeding through a residential area with his lights turned off. Police officers were called but were unable to locate Gray at his apartment or at his place of employment where a paycheck was waiting. About three months later he was found and arrested. We think the evidence before the jury was more than enough to justify a flight instruction.

## EXCESSIVENESS OF SENTENCE

This allegation of error is twofold. First, Gray claims that the court's denial of his motion to supplement his presentence report was an abuse of discretion. We think not.

■ Gray initially claimed there were errors in the presentence report. The court asked him if he wanted a hearing at which he could question the probation officer who made the report, and if so, whom did he want to be present. Gray responded that he did want the hearing but he wished to question only the officer. At the hearing Gray questioned the probation officer to establish that the report was in error by showing that he had been paroled twice rather than once but, on the other hand, that he had three convictions instead of two. Gray also asked the officer if he had interviewed anyone for a personal reference. The officer responded in the negative recalling that Gray had given him no such references indicating he had no close personal contacts with anyone. Gray moved for an order to require the officer to supplement the report by interviewing Gray's ex-landlady whom he had known for about six months. The court refused, ruling that Gray should have provided the references to the investigator before the hearing. The court also found that Gray had read the report two days before and had made no objection at that time nor had he indicated to the court or counsel before the hearing that he wanted any further investigation.

Gray was given the opportunity to obtain whatever personal reference his former landlady might have given him: he could have given her name as a personal reference to the probation officer when he was interviewed instead of affirmatively misleading him; he could have asked the court for the order when he first read the report; he could have asked the court to have the landlady testify at the hearing rather than indicating he wanted to question only the officer. In view of the entire record, we conclude that the court did not abuse its discretion in denying the motion.

■ Gray also argues that his sentence of fifty to sixty years for second degree rape is excessive. We disagree. We have consistently held that if the sentence imposed is within statutory limits it will not be reduced unless there is a clear abuse of discretion and that the court should take into account both the crime before it and the past conduct and moral character of the defendant so that the punishment may fit the offense and the offender. *State v. Myers*, 117 Ariz. 79, 90, 570 P.2d 1252, 1263 (1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978).

■ The statutorily authorized maximum sentence for second degree rape is life in prison. A.R.S. § 13–614(B). In addition to the rape in question, Gray had three prior convictions—one for armed robbery and two for forcible rape. The court did not abuse its discretion.

## PRESENTENCE INCARCERATION TIME

Gray was incarcerated for about seven months before he was sentenced. The court sentenced him to fifty to sixty years for the rape conviction and four and one-half to five years for the lewd and lascivious acts conviction to be served concurrently. The maximum sentence allowable for the lewd and lascivious acts conviction is five years. A.R.S. § 13–652. Gray contends that the court erred by failing to reduce his maximum sentence for the lewd and lascivious acts by seven months. Again we do not agree.

■ Gray has no right to have his time credited to his sentence unless he was incarcerated because he was unable to arrange bond. *State v. Prevost,* 118 Ariz. 100, 574 P.2d 1319 (App.1977). He has not so alleged. Even assuming he was incarcerated for that reason, we do not believe the court is required to credit the time to the shorter of the two sentences. Since the rape sentence imposed by the court was less than the statutory maximum, we find the sentences proper.

## SENTENCE DISCREPANCY

There is a discrepancy in the record as to the sentence imposed for the lewd and lascivious acts conviction. The clerk's minute entry reflects a four and one-half year to five-year sentence. The reporter's transcript indicates a one-half to five-year sentence. Gray argues that we should remand to the trial court to determine what sentence was actually imposed. We agree. *State v. Denson,* 110 Ariz. 159, 515 P.2d 1179 (1973); *State v. Jefferson,* 108 Ariz. 600, 503 P.2d 942 (1972).

The convictions and the second degree rape sentence are affirmed, but the case is remanded to the trial court for the purpose of determining what sentence was actually imposed for the lewd and lascivious acts conviction.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.

GORDON, Justice (dissenting):

I dissent from the majority's affirmation of the trial court's second degree rape instruction when defendant had been charged solely with first degree rape. The general rule in Arizona is that an accused may be convicted of an offense other than that with which he was charged only if it is an "included" offense. *In re Appeal in Maricopa County, Juvenile Action No. J–75755,* 111 Ariz. 103, 523 P.2d 1304 (1974); *State v. Parsons,* 70 Ariz. 399, 222 P.2d 637 (1950); *Peterson v. Jacobson,* 2 Ariz.App. 593, 411 P.2d 31 (1966). An "included" offense is defined as: (1) an offense that, by its very nature, is always a constituent part of the major offense charged; or (2) a lesser offense described by the terms of the charging document even though the lesser offense would not always form a constituent part of the offense charged. *In re Appeal in Maricopa County, Juvenile Action No. J–75755, supra.*

The facts of the instant case do not fall within either of these categories. The first category is merely another way of stating the definition of a lesser included offense. *See, generally, e. g., State v. Westbrook,* 79 Ariz. 116, 285 P.2d 161 (1954); *State v. Sanders,* 115 Ariz. 289, 564 P.2d 1256 (App. 1977). This Court has stated that second degree rape is not a lesser included offense of first degree rape. *State v. Carrico,* 116 Ariz. 547, 570 P.2d 489 (1977).

As to the second category, second degree rape was not described by the terms of the charging document in this case. Defendant was charged by information with first degree rape, without mention of the minority of the victim. Thus, defendant was convicted of an offense other than that with which he was charged, and this offense does

not meet the definitional standards of an "included" offense.

This Court has carved out one exception to the above rule, and it is upon this exception that it today bases its decision. When a defendant is charged with first degree rape, a second degree rape instruction is allowed even though the victim's minority is not mentioned in the charging document if the defendant has in some way received notice of such a possibility in time to defend. *See State v. Carrico, supra; State v. Klem*, 108 Ariz. 349, 498 P.2d 216 (1972). The Court founds this exception on its conception of the two crimes as adjuncts of one another: "merely different circumstances in which the crime of rape may be committed," in the words of the majority opinion.

Viewing the crimes as two distinct offenses, I see no justification for the exception. Forcible rape is a crime of violence, while statutory rape is non-violent. Moreover, different defenses are involved, and a defendant may virtually convict himself of statutory rape if he is surprised by a statutory rape instruction after presenting a consent defense to a forcible rape charge.[1]

The United States Supreme Court has stated:

"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal. * * * It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." *Cole v. State of Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644, 647 (1948).

*See also, Groppi v. Leslie*, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972); *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8

L.Ed.2d 240 (1962). In order to protect this important due process right, the general rule discussed above was formulated. By its terms, the charging document itself makes readily ascertainable the various offenses against which a defendant must be prepared to defend at trial. To allow notice of a potential offense from sources other than the charging document is not a sufficiently stringent safeguard of due process.

For these reasons, I would reverse on this issue.

---

1. The new Criminal Code, effective as of October 1, 1978, numerically differentiates the two offenses and adds a new defense to the crime analogous to statutory rape. This separate treatment furnishes further evidence of the separate character of the two crimes. *See* A.R.S. §§ 13–1405, 1406, 1407(B).